UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARCOS GONZALEZ,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 17-cr-2054-GPC<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 84]** |

Defendant Marcos Gonzalez has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 84. The Government opposes. ECF No. 87 ("Opp."). For the reasons that follow, Gonzalez's motion is GRANTED.

## I.  BACKGROUND

Gonzalez was convicted by guilty plea of one count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(A)(1), 846. ECF Nos. 54, 68. Gonzalez was sentenced to a term of imprisonment of 71 months, followed by 4 years of supervised release. ECF No. 68. Gonzalez is currently serving his sentence at the United States Penitentiary Atwater ("USP Atwater"). Gonzalez has served about 42 months, or almost 60 percent of his sentence, and has slightly over one and a half years remaining before his projected release date. ECF No. 84 at 20; Opp. at 2.

Gonzalez is 36 years old and is obese. ECF No. 84 at 27; ECF No. 61 ("Presentence Investigation Report" or "PSR") at 3. His body mass index ("BMI") is between 35.2 and 36.2.[1] ECF No. 84 at 4, 34; Opp. at 14. He also suffers from esophageal reflux disease ("GERD"), has had elevated blood pressure in the past as well as a latent tuberculosis infection, and reports experiencing several other medical issues while in custody, including a tooth infection and blood in his urine. ECF No. 84 at 4–6, 13, 27; ECF Nos. 88, 89.

## II. DISCUSSION

Gonzalez now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to

---

[1] The parties calculate Gonzalez's BMI differently, apparently depending on whether the standard or metric measurements from Gonzalez's health chart are used. ECF No. 84 at 34.

>the safety of any other person or the community, as provided under section 3142(g);
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Gonzalez has satisfied the administrative exhaustion requirement, and second, whether Gonzalez has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

>The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

3

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. On July 6, 2020, Gonzalez submitted a request for compassionate release to the Warden of USP Atwater, which was denied. ECF No. 84 at 17–18. The Government does not dispute that Gonzalez has met the exhaustion requirement. Accordingly, the Court finds that it can consider the merits of Gonzalez's motion.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1) (A) Extraordinary and compelling reasons warrant the reduction; or

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Gonzalez argues that his obesity, and potentially his other health issues, place him at high risk of severe illness as a result of COVID-19.  The Government contends that Gonzalez has not identified extraordinary and compelling reasons meriting his release because he has not indicated he has any medical condition that falls within the policy statement's application note.  The Government also "agrees that the nature and extent of Defendant's obesity in this case may qualify as an extraordinary reason that makes him eligible for compassionate release consideration," but argues that a number of district courts have determined that obesity alone did not justify compassionate release during the pandemic.  Opp. at 14.

The Court agrees that Gonzalez presents risk factors for serious illness from COVID-19.  Obesity is a factor identified by the Centers for Disease Control and Prevention ("CDC") to heighten the risk of severe injury for those who contract COVID-19. *People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html ("CDC, *People at Higher Risk*").  Since the early days of the pandemic, the evidence linking obesity to poor outcomes and increased mortality due to COVID-19 has grown stronger.  The CDC now lists obesity–or having a BMI of 30 or above–as one of the conditions with the "strongest and most consistent evidence" of association with severe illness from COVID-19.  *Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, Ctrs. For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html.  In light of these developments in the available scientific evidence, the Government's observation that the CDC previously listed having a BMI of over 40, rather than over 30, as a risk factor for severe COVID-19 outcomes is therefore not indicative of relaxed standards on the part of the CDC, but rather increased knowledge on the part of public health experts as the pandemic has continued.

Although scientific knowledge on the connection between obesity and adverse COVID-19 outcomes is still developing, studies have found that obesity is one of the most common comorbidities among those who are hospitalized due to COVID-19, and that people who are obese are at higher risk of hospitalization, ICU admission, and death from COVID-19. *See* Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area*, JAMA (Apr. 22, 2020), https://jamanetwork.com/journals/jama/fullarticle/2765184; Barry M. Popkin et al, *Individuals with Obesity and COVID-19: A Global Perspective on the Epidemiology and Biological Relationships*, Obesity Reviews (Aug. 26, 2020); Katherine J. Wu, *Studies Begin to Untangle Obesity' Role in Covid-19*, N.Y. Times, Sept. 29, 2020, https://www.nytimes.com/2020/09/29/health/covid-obesity.html. The Government suggests that because obesity is common in the United States, the increased risk Gonzalez faces if infected with COVID-19 as a result of his obesity may not qualify as an extraordinary and compelling circumstance justifying his release. Opp. at 14. However, that this unprecedented pandemic has unfortunately placed the health of many people in jeopardy does not alleviate the Court's concern that Gonzalez's obesity puts him at risk of becoming seriously ill should he contract COVID-19, a circumstance not contemplated at the time of his sentencing.[2]

District courts have come to different conclusions as to whether obesity, without additional risk factors, constitutes an extraordinary and compelling reasons to justify

---

[2] Gonzalez makes additional arguments regarding his GERD diagnosis, his elevated blood pressure, and history of tuberculosis (latent tuberculosis infection). ECF No. 84 at 5–6. He does not provide evidence linking these health conditions to severe COVID-19 outcomes. Although GERD may affect the likelihood that Gonzalez contracts COVID-19 according to the studies he cites, the Court notes that Gonzalez is already at significant risk of contracting COVID-19 by virtue of his incarceration at a congregate facility where effective social distancing measures may not be fully implemented.

6

release in light of the COVID-19 pandemic. *See, e.g.*, *United States v. Richardson*, No. 2:17-CR-00048-JAM, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("[T]his Court finds that hypertension or obesity alone—regardless of age—place a defendant at higher risk of COVID-19 complications."); *United States v. Jimenez et al.*, No. CR 15-87 (SDW), 2020 WL 5887578, at *2 (D.N.J. Oct. 5, 2020) ("Multiple courts in this District have denied compassionate release to inmates suffering from obesity and/or hypertension, despite the risk of COVID-19."); *United States v. Kapeli*, No. CR 16-00172 JMS (01), 2020 WL 5665057, at *4 (D. Haw. Sept. 23, 2020) ("Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release."). Courts that have denied compassionate release for defendants with these conditions have often reasoned that because they are common and can be well-managed in custody, the defendants' circumstances cannot be "extraordinary or compelling." *E.g.*, *United States v. Coleman*, No. 611CR247ORL28KRS, 2020 WL 5912333, at *3 (M.D. Fla. Oct. 6, 2020); *United States v. Medina*, No. 14-CR-60103, 2020 WL 5518148, at *3 (S.D. Fla. Sept. 14, 2020). In contrast, courts that have granted compassionate release for defendants with obesity and hypertension have tended to focus on the strong association between the conditions and severe COVID-19 outcomes. *E.g.*, *United States v. Hickman-Smith*, No. 8:14CR367, 2020 WL 5593908, at *3 (D. Neb. Sept. 18, 2020); *United States v. Campanella*, No. 18-CR-00328-PAB-12, 2020 WL 4754041, at *3 (D. Colo. Aug. 17, 2020). Although the Court recognizes that obesity is common, and that Gonzalez's obesity does not appear to significantly interfere with his day-to-day activities absent a potential COVID-19 infection, the Court declines to discount the severity of the risk to Gonzalez's health posed by his obesity on those bases.

Ultimately, while obesity alone would not be the sort of condition justifying release pursuant to Section 3582 in ordinary times, at a time in which the pandemic is still widely circulating, obesity renders Gonzalez unlikely to be able "to provide self-care

7

within the environment of a correctional facility" to avoid contracting COVID-19 and suffering potentially life-threatening health complications. U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii). Although the Government contended that USP Atwater had no active cases among inmates at the time it filed its opposition, experience has shown that congregate environments can erupt into "super-spreader" situations almost overnight. In fact, as of December 28, 2020, USP Atwater reported 115 inmates and 12 staff with active cases, even while hundreds of tests remained outstanding. ECF No. 92. Therefore, the Court finds that the risk Gonzalez's health conditions pose in light of the COVID-19 pandemic may present extraordinary and compelling reasons for reduction of his sentence under Section 3582.

The factors outlined in section 3553 and 3582 also require consideration of public safety, the seriousness of the offense, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). The Court notes that Gonzalez committed an offense involving conspiracy to distribute of a substantial quantity of methamphetamine and that he has a criminal history involving controlled substance possession, possession with intent to sell, and importation, and a decade ago committed a shoplifting offense after which he attempted to flee with his child in the car. PSR at 8–12. Gonzalez has also failed to comply with his conditions of supervised release in the past. *Id.* Although this history does concern the Court, Gonzalez played minor role in the instant offense and the Court ultimately sentenced him to below the guideline range. Gonzalez now has served approximately three and a half years, which is almost 60% of his full sentence. PSR at 7; ECF No. 68 at 2. Taking credits into account, his anticipated release date is slightly over a year and a half away. If he is released, Gonzalez would return to live with family in Spring Valley, California, specifically his sister's family and his child, which would allow the Court to impose a term of home confinement. Accordingly, the Court finds that releasing Gonzalez to home confinement after having served over a majority of his sentence would sufficiently mitigate the

potential danger to the public and provide just punishment for the offense.  *Cf. United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401 (S.D. Tex. May 29, 2020) (granting release of defendant serving sentence for drug trafficking offense who had served 12 years of life sentence); *United States v. Ramirez*, No. 7:16-CR-55, 2020 WL 5637402 (W.D. Va. Sept. 21, 2020) (granting release of defendant serving sentence for possession of methamphetamine with intent to distribute who had served over 50% of his sentence).

Ultimately, the Court finds that Gonzalez's obesity puts him at increased risk of severe illness should he contract COVID-19.  The Court will reduce the sentence to time served and modify the conditions of supervised release to provide for home incarceration at the residence of Gonzalez's sister in Spring Valley.  *See United States v. Ben-Yhwh*, ___ F.Supp.3d ___, No. CR 15-00830 LEK, 2020 WL 1874125, at *1 (D. Haw. Apr. 13, 2020) (reducing sentence to time served and mandating home confinement on supervisory release); *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020) (reducing sentence to time served and requiring defendant to live at specific care center on supervised release for 5 years); *United States v. Flores*, No. 19-CR-6163L, 2020 WL 3041640 (W.D.N.Y. June 8, 2020) (reducing sentence to time served and ordering 18 months of home confinement); *United States v. Ramos*, No. 18-CR-30009-FDS, 2020 WL 1478307, at *2 (D. Mass. Mar. 26, 2020) (granting release and ordering home detention).

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

## III. FINDINGS

In light of the heightened medical risk the COVID-19 pandemic poses to Gonzalez in particular, there are extraordinary and compelling reasons to order his immediate release from USP Atwater. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation." *United States v. Hernandez*, No. 18-cr-00834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020). "It presents a clear and present danger to free society for reasons that need no elaboration." *Id.* The CDC has warned that COVID-19 poses a heightened risk to those incarcerated in correctional facilities. *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.  Gonzalez's continued incarceration over the coming weeks would impose upon him—in addition to other inmates and staff—additional and unnecessary health risks that can be minimized by his early release.

## IV. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today.  Gonzalez's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 48-month term of supervised release under conditions set forth in the original judgment, plus the following added special condition:

(1) Gonzalez shall be placed in home confinement for a period of 18 months without electronic monitoring where he will be restricted to his residence at all times except for medical necessities and court appearances or other activities specifically pre-approved by the Court.

It is **FURTHER ORDERED** that Gonzalez shall remain in self-quarantine for a period of time not less than 14 days after his release.

Gonzalez is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of his release from BOP custody.

The Government shall serve copies of this order on the Warden of USP Atwater immediately. The Warden shall immediately release Defendant Marcos Gonzalez from custody. In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: January 4, 2021

Hon. Gonzalo P. Curiel
United States District Judge